UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1983

CHARLES J. OROPALLO,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Martin F. Loughlin, Senior U.S. District Judge]

Before

Breyer, Chief Judge,

Torruella and Cyr, Circuit Judges.

Charles J. Oropallo on brief pro se.

Jeffrey R. Howard, United States Attorney, James A. Bruton,

Acting Assistant Attorney General, Gary R. Allen, Gilbert S.

Rothenberg and Roger E. Cole, Attorneys, Tax Division, Department of

Justice, on brief for appellees.

May 24, 1993

Per Curiam. The district court dismissed Charles

Oropallo's suit for a tax refund as untimely under 26 U.S.C.

6511(a). We affirm.

I. Background

Charles Oropallo worked for the Raytheon Service

Company during the 1983 calendar year. In 1985, he was

incarcerated. Four years later the IRS informed him that he

had not filed any tax returns since 1982. Oropallo then

obtained his W-2 form from Raytheon. When he filled out his

1983 tax return, he discovered that he had overpaid his taxes

by approximately $698. He filed his return on March 19,

1990, claiming that amount as a refund. On May 23, 1990, the

IRS mailed him a notice disallowing his claim, explaining

that it could not "refund or credit tax that was paid more

than 3 years before the filing of the claim . . . ." The

notice also told Oropallo that he could sue to recover "any

tax . . . or other amounts for which this disallowance notice

is issued" by filing suit in the appropriate federal district

court (or the U.S. Claims Court) within two years from the

mailing date of the notice.

Oropallo filed suit in the district court within

the two-year period described by the disallowance notice. He

alleged that "extremely mitigating and extenuating

circumstances" explained his failure to file his 1983 tax

return on time. First, he had believed that a six-year

limitations period applied. Second, in March 1983, he had

suffered carbon monoxide poisoning which left him "extremely

incapacitated and unable to function competently for several

years" and, for that reason, he had been "completely unaware"

that he had not filed his 1983 tax return "and had in fact

believed he had timely filed said return." Furthermore, he

had been in prison since 1985, prison authorities had impeded

his legal efforts on his own behalf, and although he had

informed the U.S. Post Office of address changes while

incarcerated, he had not received notice that he had not

filed the 1983 return until mid-1989.

Without waiting for the government's brief, a

magistrate-judge recommended dismissing Oropallo's complaint,

finding that the suit was untimely under 26 U.S.C. 7422(a)

and 6511(a) and that the court therefore had no subject

matter jurisdiction over the suit under 28 U.S.C.

1346(a)(1). The magistrate-judge also concluded that

Oropallo's incarceration had not affected his ability to file

a timely tax return, since, while incarcerated, he had in

fact filed the return in question. Oropallo objected to the

magistrate-judge's recommendations. He noted that the

magistrate-judge had not considered his alleged carbon

monoxide poisoning before concluding that his late filing was

not excused, and he offered as an additional reason for his

delay the fact that his ex-wife had taken his tax and

financial records in early 1984 and moved to an unknown

-4-
4

address. Oropallo also argued that the IRS had consented to

his suit because the disallowance notice stated that he could

bring suit within two years from the mailing date of the

letter and he had done so. The district court subsequently

accepted the magistrate-judge's recommendation and dismissed

Oropallo's suit.

On appeal, Oropallo alleges that the dismissal of

his suit violated his constitutional rights under both the

United States and New Hampshire Constitutions. He says that

dismissal of his suit deprived him of his property without

due process of law and of his right to access to the courts

to seek redress for his grievances. He also claims that,

given the circumstances he alleges, the statute of

limitations should have been tolled. Applying the

limitations period to him, he argues, also violated his equal

protection rights under the Constitution since, as he claims,

the IRS can "reach back" farther in time to make claims

against taxpayers than taxpayers can to recover refunds.

Finally, Oropallo asserts that the language of the IRS

disallowance notice, stating that he could bring suit within

two years of the mailing date of the notice, constituted

consent to his suit and waived any limitations bar. W e

affirm for the reasons described below.

-5-
5

II. Discussion

Since the statute of limitations and equitable

tolling issues are at the heart of this case, we address them

first.

A. Equitable Tolling of Section 6511(a) and (b)

As the district court noted, 28 U.S.C. 1346(a)(1)

gives federal district courts jurisdiction over suits against

the United States "for the recovery of any internal-revenue

tax alleged to have been erroneously or illegally assessed or

collected." Likewise, the court correctly observed that the

jurisdictional grant in section 1346(a)(1) must be read to

incorporate the requirements of 26 U.S.C. 7422(a) and

6511(a). See United States v. Dalm, 494 U.S. 596, 601-02,

608-10 (1990).

Section 7422(a) provides that no suit for a tax

refund may be maintained unless "a claim for refund or credit

has been duly filed with the Secretary, according to the

provisions of law in that regard, and the regulations of the

Secretary established in pursuance thereof." Section 6511(a)

states that a refund claim must be filed "within 3 years from

the time the return was filed or 2 years from the time the

tax was paid, whichever of such periods expires the later, or

if no return was filed by the taxpayer, within 2 years from

the time the tax was paid." Thus, section 6511(a)

-6-
6

distinguishes between taxpayers who file returns and those

who do not. Taxpayers who file returns have the longer of

three years from the time they filed their return or two

years from the time they paid their taxes to file a claim for

refund, whereas taxpayers who have not filed returns have

only two years from the time they paid their taxes to file

their refund claims. A refund suit must have been timely

filed under one of the limitations periods in section 6511(a)

for the district court to obtain jurisdiction over the suit.

Dalm, 494 U.S. at 609.

The district court did not explain clearly how

Oropallo's claim was untimely under section 6511(a). Its

opinion contained language which would support either the

conclusion that it had applied the three-year limitations

period for taxpayers filing returns or that it had applied

the shorter two-year limitations period for taxpayers who did

not file returns. The government urges us to affirm the

district court's implicit holding that the two-year

limitations period for nonfiling taxpayers applies and that

Oropallo's late return is not a "return" which triggers

application of the three-year limitations period. Although

it acknowledges that there is a split in authority on the

question whether a return filed after its due date is a

"return" within the meaning of section 6511(a), compare,

e.g., Musser v. Commissioner, 92-1 USTC 50,245 (D. Alaska

-7-
7

1991) (the two-year limitations period measured from the time

the tax was paid is applicable to taxpayers filing late

returns), with Mills v. United States, 805 F. Supp. 448, 450

(E.D. Tex. 1992) (the three-year limitations period beginning

when the return is filed applies to a taxpayer filing a late

return), the government argues that a finding that taxpayers

filing late returns have only two years from the time their

taxes are paid to file refund claims better reflects the

statutory language.

We need not resolve this question in light of our

determination on the tolling issue. For purposes of our

present analysis, therefore, we assume for the sake of

argument that the cases holding that a late return is a

"return" within the meaning of section 6511(a) are correct.

Accordingly, we also assume that, if Oropallo filed his claim

for a refund within three years of his return, his refund

claim would be timely. Under 26 C.F.R. 301.6402-3(a), a

return which claims a refund may be considered a "claim for

refund" under section 6511(a). Oropallo's return, which was

filed on March 19, 1990, claimed a refund. Therefore, the

claim, having been filed on the same day as his return, would

obviously have been filed within three years of the filing of

the return and so was timely.

This assumption, however, does not mean victory for

Oropallo. As the government says, section 6511(b)(2)(A)

-8-
8

places a cap on recovery of a refund which, in Oropallo's

case, prevents recovery of any taxes paid for the 1983 tax

year. Specifically, section 6511(b)(2)(A) states that, with

respect to a claim filed during the three-year period in

section 6511(a), the amount of the refund is limited to "the

portion of the tax paid within the period, immediately

preceding the filing of the claim, equal to 3 years plus the

period of any extension of time for filing the return."

Since Oropallo filed his claim on March 19, 1990, he may

recover only taxes paid in the preceding three years -- i.e.,

any taxes paid on or after March 19, 1987. (As the

government notes, Oropallo has not claimed that he received

any extension of time for filing his 1983 return.) Under 26

U.S.C. 6513(b)(1), Oropallo's taxes were deemed paid on

April 15, 1984, well before the cut-off date of March 19,

1987. Therefore, he may not recover any portion of those

taxes.

Section 6511(b)(2)(A) explicitly forecloses any

refund for taxes not paid within the three-year period

preceding the date the claim was filed.1 Essentially,

1. Thus, where the taxes sought to be recovered are deemed
paid as of the date the return was due (and no extension for
filing the return was granted), a return such as Oropallo's,
which itself is the refund claim, must be filed within three
years of its due date for the taxpayer to be able to recover
any of the taxes paid. Basically, for a taxpayer in
Oropallo's situation, section 6511(a) and (b)(2)(A) work
together with section 6513(b)(1) to impose a three-year
statute of limitations on refund claims, measured from the

-9-
9

therefore, it establishes an additional limitations period

separate from the three-year period in section 6511(a). See,

e.g., Mills v. United States, 805 F. Supp. 448, 450 (E.D.

Tex. 1992) (for a taxpayer who has filed a return, the

provisions of section 6511(a) and (b)(2)(A) establish "two

limitations hurdles" -- (1) a refund claim must be filed

within three years after the tax return is filed, and (2) the

amounts sought to be recovered must actually have been paid

in the three-year period preceding the filing of the claim).

That additional limitations period effectively bars some of

the refund claims which would be unquestionably timely under

section 6511(a). See, e.g., Rainey v. United States, 82-2

USTC 9442 (N.D. Ala. 1982) (the taxpayer's claim was not

untimely under section 6511(a), but it was denied under

section 6511(b)(2)(A) because the taxes had not been paid

within the prescribed period before the claim was filed);

McGregor v. United States, 80-2 USTC 9647 (Ct. Cl. 1980)

(same). Accordingly, unless the additional limitations

period imposed by section 6511(b)(2)(A) is equitably tolled,

Oropallo's action should be dismissed.

original due date of the tax return. See Tallon v. United

States, 84-2 USTC 9926 (C.D. Ill. 1984) (after discussing

the effect of sections 6511(b)(2)(A) and 6513(b)(1) on the
taxpayers' timely refund claim, which was made in a late
return, the court concluded that "the Plaintiffs have been
barred from recovering their refund by failure to file their
returns within three years of the time they were due").

-10-
10

2. Equitable Tolling

Oropallo argues that the limitations period should

be tolled "[i]n the interests of justice" given the

"extremely mitigating and extenuating circumstances" of his

case. In our opinion, only Oropallo's alleged carbon

monoxide poisoning could qualify for that characterization.2

The government interprets Oropallo's argument to be an

attempt to invoke either the mitigation provisions of the tax

code, 26 U.S.C. 1311-14, or the judicial doctrine of

equitable recoupment. It correctly points out that neither

the mitigation provisions nor the equitable recoupment

doctrine apply. In view of Oropallo's status as a pro se

petitioner, however, we think we have an obligation to go

beyond the government's brief and to take account of recent

2. We assume that carbon monoxide poisoning, which Oropallo
alleges not only incapacitated him for several years, but
also deprived him of his ability to know that he had not
filed a 1983 tax return, would be analogous to mental
incapacity and thus could be a ground for equitable tolling
if Oropallo could show that his alleged poisoning had
actually prevented him from filing his 1983 return on time or
from remembering earlier than 1989 that he had not done so.
See Lopez v. Citibank, N.A., 808 F.2d 905, 907 (1st Cir.

1987) (assuming, in a suit between private parties, that
mental illness "might sometimes toll the statute of
limitations," the court concluded that it did not do so where
the plaintiff was represented by counsel at the relevant time
and so was not actually prevented from timely filing suit by
his mental illness). The other grounds for equitable tolling
which Oropallo alleges do not appear to have caused him to
delay filing his return, either in 1983 or in 1989 after he
learned that his 1983 return had not been filed. For that
reason, we do not see how they could be found to excuse that
delay.

-11-
11

developments in the law which are not discussed by the

government.

Before 1990, Oropallo would have had no basis for

claiming that the limitations periods in section 6511 should

be equitably tolled. Courts traditionally have declined to

apply equitable principles to toll statutes of limitations

against the United States, on the theory that the United

States could be sued only by virtue of its waiver of its

sovereign immunity and that the terms of any such waiver had

to be strictly construed. Irwin v. Veterans Administration,

498 U.S. 89, 111 S. Ct. 453, 458-59 (1990) (White, J.,

concurring); see, e.g, United States v. Dalm, 494 U.S. 596,

608 (1990).3 Therefore, except in clearly unique situations

which do not apply here, the limitations periods in section

6511 have not been equitably tolled. See, e.g., Ellis v.

United States, 82-1 USTC 9214 (Ct. Cl. 1982) ("[t]here is

nothing in any of the[] provisions [relating to tax refunds]

that permits an exception to th[e] time limitation to be made

3. In addition, tax laws have been viewed as technical laws
which are not subject to general principles of equity. See

Lewyt Corporation v. Commissioner, 349 U.S. 237, 249 (1955);

Ewing v. United States, 914 F.2d 499, 501 (4th Cir. 1990),

cert. denied, 111 S. Ct. 1683 (1991). Consequently, courts

have required strict adherence to the administrative
prerequisites set out in the Internal Revenue Code, including
the explicit and clearly stated limitations periods at issue
here. See Dalm, 494 U.S. at 608-10; In re Graham, 981 F.2d

1135, 1138 (10th Cir. 1992); Bruno v. United States, 547 F.2d

71, 73-74 (8th Cir. 1976); Dixon v. United States, 85-1 USTC

9173 (Cl. Ct. 1985).

-12-
12

because of the illness of the taxpayer or his family or other

extenuating circumstances"); Stepka v. United States, 196 F.

Supp. 184, 185 (E.D.N.Y. 1961) (the statute of limitations

relating to refund claims under the pre-1954 tax code is

"inflexible" and so not tolled by the taxpayer's mental

incompetency; there are only "rare exceptions" to the "rigid

prevailing rule[] that such statutes of limitations cannot be

extended in any circumstances," e.g., the prisoner of war or

fraud situation); contrast, e.g., Daney v. United States, 247

F. Supp. 533, 535 (D. Kan. 1965) (the court permitted tolling

of the limitations period on a refund claim by a noncompetent

restricted Indian because the general rules of tax law do not

apply "in a strict manner" to restricted Indians), aff'd, 370

F.2d 791 (10th Cir. 1966).

In Irwin v. Veterans Administration, 498 U.S. 89,

111 S. Ct. 453 (1990), however, the Supreme Court changed its

approach to the issue of equitable tolling in suits against

the government, holding that "the same rebuttable presumption

of equitable tolling applicable to suits against private

defendants should also apply to suits against the United

States." Id. at 457.4 In reliance on Irwin, several

4. Although the Court's opinion presents some interpretive
difficulties, it would seem to have overruled or made
irrelevant prior case law which sought to determine whether a
particular limitations period could be tolled by determining
whether the time limit was jurisdictional or not. See, e.g.,

Soriano v. United States, 352 U.S. 270, 276 (1957) (holding

that a limitations period on claims against the United States

-13-
13

federal district courts have permitted equitable tolling of

the limitations period in section 6511(a) or (b)(2)(A) in

view of a taxpayer's argument that mental incompetence had

kept him or her from timely filing a refund claim. See

Wiltgen v. United States, -- F. Supp. --, 93-1 USTC 50,044

(N.D. Iowa 1992) (section 6511(b)(2)(A)); Scott v. United

States, 795 F. Supp. 1028 (D. Hawaii 1992) (stating that

equitable tolling of section 6511(a) was at issue, although

the facts indicate that section 6511(b)(2)(A) could have been

involved as well); Johnsen v. United States, 758 F. Supp. 834

(E.D.N.Y. 1991) (section 6511(b)(2)(A)).5 In our view, the

contained in the statute granting jurisdiction over such
claims could not be tolled); see Irwin, 111 S. Ct. at 458-59

(White, J., concurring) (establishing a presumption in favor
of equitable tolling against the government was inconsistent
with the Court's traditional approach and essentially
overruled Soriano). The key issue is still Congressional

intent, but, by creating a presumption in favor of equitable
tolling, the Court has squarely placed on the government the
burden of showing that a particular limitations period may
not be equitably tolled. Cf. Schmidt v. United States, 933

F.2d 639, 640 (8th Cir. 1991) (in an action under the Federal
Tort Claims Act after Irwin, the government has the burden of

establishing the statute of limitations as an affirmative
defense).

5. But see Vintilla v. United States, 931 F.2d 1444, 1447 &

n.1 (11th Cir. 1991), in which the court adhered to a pre-
Irwin mode of analysis and ruled that the limitations period

in section 6511(a) may not be equitably tolled since timely
filing of a refund claim is a jurisdictional prerequisite to
suit. In Vintilla, the taxpayer had been required to pay

upfront the entire tax due on his severance benefit whereas
similarly situated taxpayers paid taxes as if receiving the
benefit in installments. The IRS had told the taxpayer that
a refund claim could be filed after he litigated the mode of
payment of the severance benefit; after the litigation had

-14-
14

relevant analysis has been altered yet again by a more recent

Supreme Court decision. In Lampf, Pleva, Lipkind, Prupis &

Petigrow v. Gilbertson, -- U.S. --, 111 S. Ct. 2773 (1991),

the Supreme Court considered whether to adopt a federal

limitations period in private suits under section 10(b) of

the Securities Exchange Act of 1934 and, if so, whether that

period would be subject to equitable tolling.6 The Court

concluded that a federal limitations period should be

adopted. It selected the 1-and-3-year limitations periods

contained in the 1934 Act and in the original remedial

ended, however, the IRS denied the taxpayer's claim as
untimely.

6. Although Lampf involved a lawsuit between private

parties, it is clearly relevant here. As the Supreme Court
stated in Irwin, equitable tolling principles in suits

against the government should be consistent with those
applied against private defendants, and should be employed
"no more favorabl[y]" against the government than against
private defendants. Irwin, 111 S. Ct. at 457, 458.

Nor do we think that Lampf is inapplicable because it

considered a statute of limitations applicable to bringing a
lawsuit rather than time limits imposed on the filing of an
administrative claim. If a specific equitable consideration
would justify tolling the limitations period for filing suit,
that same equitable consideration should justify tolling the
administrative time limits which have been held to be
prerequisites to bringing suit. See Johnsen v. United

States, 758 F. Supp. 834, 835 n.1 (E.D.N.Y. 1991) ("the same

equitable considerations are involved in both judicial and
administrative procedural defaults" and so a distinction
between the equitable tolling of judicial actions and
administrative exhaustion requirements cannot "reasonably" be
drawn); Zipes v. Trans World Airlines, Inc., 455 U.S. 385,

388-89 & n.2, 393 (1982) (deciding that a "statute of
limitations" requiring that a charge of discrimination be
filed with the EEOC within 90 days of the alleged unlawful
employment practice could be equitably tolled).

-15-
15

provisions of the Securities Act of 1933, as typified by

section 9(e) of the 1934 Act. See 111 S. Ct. at 2781, 2782

n.9.

Section 9(e) prohibits any action for a violation

of the section if not brought "within one year after the

discovery of the facts constituting the violation and within

three years after such violation." Id. at 2780 n.6 (quoting

15 U.S.C. 78i(e)). Citing Irwin, the Court acknowledged

that time limits in law suits are "customarily" subject to

equitable tolling. It also agreed that, in fraud cases, the

limitations period does not usually begin running until the

fraud is discovered. Nevertheless, the Court held that time

limits, expressed as in section 9(e), were not subject to

equitable tolling. In the Court's view, it was "evident that

the equitable tolling doctrine is fundamentally inconsistent

with the 1-and-3-year structure." Id. at 2782. It explained

what it meant as follows:

The 1-year period, by its terms, begins after
discovery of the facts constituting the violation,
making tolling unnecessary. The 3-year limit is a
period of repose inconsistent with tolling. . . .
"[T]he inclusion of the three-year period can have
no significance in this context other than to
impose an outside limit." (Citations omitted.)
Because the purpose of the 3-year limitation is
clearly to serve as a cutoff, we hold that tolling
principles do not apply to that period.

Id.

We think that section 6511(a) and (b)(2)(A) are

structured like the 1-and-3-period considered by the Supreme

-16-
16

Court in Lampf. Under section 6511, a taxpayer who has filed

a return must clear two time barriers. The first one is in

section 6511(a), which requires taxpayers to file a refund

claim within three years of filing a return. We have assumed

that a return can be filed at any time after its due date and

still be a return for purposes of filing a claim within that

three-year period. Under that interpretation, the

limitations period in section 6511(a) is totally illusory.

See, e.g., Mills v. United States, 805 F. Supp. 448, 451

(E.D. Tex. 1992) (section 6511(a) would "permit a taxpayer to

file a tax return 40 years late and still have 3 additional

years in which to file a claim for refund"). In this

respect, the three-year period in section 6511(a) is

analogous to the one-year period discussed in Lampf. The

one-year period requires only that suit be filed within one

year after discovery of the facts which give rise to the

cause of action. Since the discovery of those facts could

occur any number of years after the statutory violation had

actually taken place, the 1-year period sets no real limit on

when suit can be brought.

The analogy between the limitations period in

section 6511(a) and the 1-year period typified by section

9(e) extends even further. In Lampf, the Supreme Court

commented that the one-year period for filing suit after

discovery of the facts giving rise to the cause of action

-17-
17

made tolling unnecessary. Lampf, 111 S. Ct. at 2782. What

the Court obviously meant was that once someone who has been

defrauded knows the relevant facts, the 1-year period gives

that person ample time in which to sue and there is no need

to toll the 1-year limitations period. A similar state of

knowledge respecting the right to a refund can be attributed

to individual calendar year taxpayers who file income tax

returns. The return contains all the information necessary

to verify that there has been an overpayment of taxes and

that a refund is due. Accordingly, the three-year period in

section 6511(a) gives the taxpayer ample time to file a

refund claim, and there is no need to toll that period.

Essentially, then, section 6511(a) serves simply to

identify which taxpayers have properly positioned themselves

to obtain a refund. Like the 1-year period in Lampf,

however, it does not describe which of those potential

claimants will actually succeed in pursuing their rights.

That task is left to section 6511(b)(2)(A), which,

significantly, the tax code characterizes not as a

limitations period, but as a "limit on [the] amount of credit

or refund." See 26 U.S.C. 6511(b)(2)(A) (caption).7 As

7. Section 6511(b)(2)(A) works together with section 6511(a)
and section 6513(b)(1) to bar recovery of any refund claims
on late returns not filed within three years after the due
date of the return, and thus it clearly operates like a
statute of limitations. However, Congress's characterization
of section 6511(b)(2)(A) as a "limit on [the] amount of
credit or refund" rather than as a limitations period

-18-
18

we said earlier, section 6511(b)(2)(A) limits the refund

recoverable to the amount of tax paid in the three-year

period immediately preceding the filing of the claim. For an

individual calendar year taxpayer like Oropallo, taxes

withheld from wages during the tax year are deemed paid on

April 15th of the following year, the date when the tax

return is due. See 26 U.S.C. 6513(b)(1). For that reason,

if the return is not filed and the claim not made within the

three years immediately following that date, section

6511(b)(2)(A) precludes the recovery of any of the taxes

paid.

Here, Oropallo's 1983 taxes were deemed paid on

April 15, 1984, and his refund claim was timely filed on

March 19, 1990, the same day he filed his return. Under

section 6511(b)(2)(A) he may recover any taxes paid in the

immediately preceding three-year period, i.e., on or after

March 19, 1987. But all of the taxes Oropallo seeks to

recover were paid before March 19, 1987, and thus he recovers

nothing. Unquestionably, then, that date serves as an

absolute cut-off point. By imposing an "outside limit" or

"cut-off" on the amount of taxes which can be recovered,

section 6511(b)(2)(A) operates like the three-year portion of

the limitations period in Lampf, and thus is a "period of

indicates more clearly than a simple limitations period would
that Congress intended to establish an outside limit on the
recovery of refunds.

-19-
19

repose inconsistent with tolling". See 111 S. Ct. at 2782.

See Wiltgen v. United States, -- F. Supp. --, 93-1 USTC

50,044 (N.D. Iowa 1992) (calling section 6511(b)(2)(A) a

"period of repose," but, without referring to Lampf, finding

that the section could be equitably tolled under Irwin);

McGregor v. United States, 80-2 USTC 9647 (Ct. Cl. 1980)

(calling the date beginning the three-year period immediately

preceding the date of a refund claim the "cut-off date").

Because, together, section 6511(a) and (b)(2)(A) function

like the 1-and-3-year period found inconsistent with

equitable tolling in Lampf, we conclude that those provisions

may not be equitably tolled.

B. Remaining Claims

Oropallo's remaining claims are without merit for

the reasons stated in the government's brief. We comment on

several claims only.

At the heart of Oropallo's due process claims is

the contention that he should have been given a hearing

before his refund claim was denied and his suit dismissed.

The short answer is that an administrative hearing would not

have changed the outcome for Oropallo. The critical facts

relating to the date Oropallo's taxes were paid and his

-20-
20

refund claim filed are not disputed. In view of those facts,

section 6511 unquestionably bars Oropallo's recovery of any

portion of his 1983 taxes. Furthermore, it is well settled

that post-collection judicial review accords a taxpayer all

the process that is due under our tax laws. Martinez v. IRS,

744 F.2d 71, 72 (10th Cir. 1984); Rosenberg v. Commissioner,

450 F.2d 529, 533 (10th Cir. 1971) ("[d]ue process does not

require a hearing at the initial stage or at any particular

point of an administrative proceeding"); cf. Kahn v. United

States, 753 F.2d 1208, 1218-19 (3d Cir. 1985) (stating that

the principle that post-collection judicial review is

constitutionally sufficient does not apply where a taxpayer

has to pay part of a disputed penalty before being able to

seek judicial review, the court weighed the government's

interests against the taxpayer's, but concluded nonetheless

that no pre-collection hearing was constitutionally

required). Both this court and the district court have

reviewed the IRS's denial of Oropallo's refund claim and have

issued opinions explaining that his claim is barred because

it was untimely. Thus, Oropallo has received the post-

collection judicial review to which he was entitled. Second,

Oropallo argues that the disallowance notice and various IRS

publications referring to a two-year period for suit

constituted governmental consent to his suit which waived the

time bar. This argument fails to appreciate the distinction

-21-
21

between a taxpayer's right to bring a lawsuit to review

administrative action and the taxpayer's separate obligation

to pursue first the administrative procedures prescribed in

the tax code. Section 6532(a)(1) of the Internal Revenue

Code contains the two-year limitations period in question.

It requires a taxpayer suing for a refund under section

7422(a) to bring suit within two years after the mailing date

of a disallowance notice. As is evident from the record,

Oropallo complied with that requirement. But section

6532(a)(1) regulates only the time for bringing a suit to

review the denial of an administrative claim. The Code also

imposes certain administrative requirements respecting refund

claims which Oropallo was required to follow. Those

administrative requirements are contained in sections 7422(a)

and 6511, see Rosenbluth Trading, Inc. v. United States, 736

F.2d 43, 45 n.1 (2d Cir. 1984), and have been discussed fully

in this opinion. Thus, Oropallo is right in saying that he

complied with the two-year period referred to in the

disallowance notice, but that notice could not have waived

his separate obligation to pursue his administrative remedies

in a timely fashion. See Allen v. United States, 439 F.

Supp. 463, 465 (C.D. Cal. 1977) (a notice disallowing

taxpayer's refund claim as untimely did not waive the

government's limitations defense under section 6511(a) by

stating that the taxpayer had two years in which to bring

-22-
22

suit, but "merely . . . notif[ied] the Plaintiff of his right

to contest the government's interpretation of the

applicability of the statute of limitations").

Finally, Oropallo claims that his equal protection

rights have been violated because the IRS can reach back

farther in time to collect taxes than he can to collect a

refund. We think that Oropallo would be hard-pressed to show

that he and the IRS are similarly situated parties in the tax

collection context so as to make equal protection analysis

applicable. Cf. Musser v. United States, 92-1 USTC 50,245

(D. Alaska 1991) (it is not discriminatory for the government

to have a longer period to sue for recovery of erroneous tax

refunds than a taxpayer is allowed to sue for overpayment of

taxes since the IRS deals with millions of tax returns per

year while a taxpayer typically has only one return to be

concerned about each year). In any event, we find no such

violation here. As the government observes, in one respect

Oropallo's claim is factually wrong. Just as the taxpayer

has three years from the date of filing a return to file a

refund claim, so the government generally has only three

years from the date a return is filed to make a deficiency

assessment. See 26 U.S.C. 6501(a). As our opinion

explains, however, section 6511(a) and (b)(2)(A), together

with section 6513(b)(1), effectively impose on a taxpayer in

Oropallo's situation an additional, absolute three-year

-23-
23

limitations period on refund claims beginning the date the

return was due. The government does not appear to be subject

to that limitations period in assessing deficiencies.

Nevertheless, the apparent disparate treatment does not

violate Oropallo's constitutional rights. It seems obvious

to us that, if the government were held to that same

additional limitations period, any taxpayer could (and many

might) prevent the government from ever assessing a

deficiency merely by waiting to file a return until three

years after its due date, an outcome that would seriously

undermine the collection of taxes.

The judgment of the district court is affirmed.

-24-
24